Good morning. Lawrence Padway, appearing for the appellant, Faith Munn. This case didn't settle because of a dispute over terms of the proposed settlement agreement. And it's actually kind of a rare opportunity that we have today to discuss what's appropriate in a settlement agreement and what's not. Counsel, let me just be sure I understand something. It's pretty boilerplate law that you can't discuss settlement terms, things that are discussed in a settlement agreement. Are you proposing to discuss items of that nature or more just general issues? I think we're really talking about general issues. Okay. This is an ERISA case. You shouldn't have to give up rights to get paid benefits that are due in an ERISA case. You shouldn't have to release claims that are not related to the ERISA claim. You shouldn't have to agree never to do business with a company again. Isn't that what settlement's all about, counsel? I mean, isn't that what settlement's all about, that you give up claims that ordinarily you wouldn't, but you're doing it because you're getting something in exchange? Well, I think that ERISA is about trust law. And if you're a trustee and you're resolving a claim with a beneficiary ---- Do you think that when, in the context of settlement negotiations, there is a fiduciary duty to ---- Yes. And that's a White v. Western title, which we cite. Well, in this case, one thing that would be helpful for me to hear from you on is the magistrate judge had made a determination with respect to Lena. I don't know if that's how you pronounce it, but that's how I've been pronouncing it in my head, that with respect to them, that they actually, you know, didn't have certain authority, and so they really weren't acting as a fiduciary. And then that finding was adopted by the district court. Yes. Would you address whether you think that, as a matter of law, is where we sort things out, and where do you stand on that divide? Thank you. The Court determined that the life insurance company in North America was the claims administrator. So they have the authority to decide which claims to pay. They have the authority to pay the claims. They were at the mediation. In fact, they were the only party present at the mediation. They're the ones who draft the settlement agreement. So if they're not there ---- Do they have the authority? Well, frankly, I would much prefer to have the plans appearing at settlement conferences. But my question is, you know, here's what ---- But they don't. Yeah, I agree. Here's what happens a lot when I've been in those settlement conferences. People send somebody without authority, right? And then sometimes I say, you have to get the person here with authority, because we don't really want to deal with this person that doesn't have any authority, and then we go through a back and forth. But the real question here is that practical problem aside, did they have the authority or not? If they are the claims administrator, they have the authority. It's their responsibility. As a matter of fact, in this case, correct me if I'm wrong, my understanding is that your client waived the issue of the delegated discretion, and she never raised it at the district court. She made a binding judicial admission before the district court about the delegated discretion. Is that incorrect? Yes. Tell me why, please. In the district court, each side filed a single brief on standard of review. With the defendant's brief, for the first time, we had the master plan documents. So there wasn't an opportunity to analyze the master plan documents before briefing the standard of review issue. When we had an oral argument on that, the district court's concern was limited pretty much to the mixed case, and so a subsequent letter briefing dealing specifically with that case. So it certainly wasn't waived. It was contested. What we agreed is that the summary plan description contained language which allowed the plan administrator to delegate authority, to delegate discretion. But we also argued that it's the master plan document that needs to be produced, and that's what you really have to look at. And that, after this case was decided, the Supreme Court in Amera made that very clear. You're going beyond the issue I'm raising. Let's take the issue of the admission before the district court. Are you representing to the court today that there was not an agreement, an admission, that there was a valid delegation of discretion in this case? Because we have the record, you know. I just want to get your ---- There was no admission of a valid delegation of discretion in this case. We were arguing for de novo review in the district court. If we find it the contrary, do you agree that, as far as the waiver issue is concerned, you have a problem? In other words, is an admission in the district court binding for purposes of this matter? Yes. Okay. So it's just a question of what the record says then, right? Well, I guess I read ---- I thought you put in a brief in the district court where you said certain plan documents gave discretion, but the insurance policy did not. Is that sort of how it read? Well, I think what we said in the district court was you have to look at the master plan document. It's not sufficient to have a delegation of discretion in the summary plan description. Okay. But if the master plan document does delegate discretion, would you agree that that was enough, or are you arguing that it must also be in the insurance contract? It has to be in both. It has to be in both? Yes. And I take it that the answer to this question, though, doesn't resolve your breach of fiduciary claim question and your evidentiary, what we started on. We've now shifted to a completely different kind of discretion, correct? Absolutely. Okay. You can go back to wherever you want, Counsel. And actually, I think that kind of my next point is that I think it would be very useful for the district courts to have and for the parties to have some guidance so that we don't have the problem that we have in this case where the plan documents are showing up on motions when they should have been in the administrative record. So I think it would be useful for practitioners to have some case law that says in your insurance policy. Can we skip over to the, let's assume for a minute there's no waiver issue. Let's skip over to the merits here. You've indicated that Linus should not be deemed to have discretion because of the State of California's policy against discretionary clauses in insurance contracts. As I understand it, the language to conferring discretion was not in the insurance contract, but rather in the H.E.R.T.S. master plan document. So wouldn't you agree that any rules or policies involved with the State of California against discretionary clauses in contracts would not apply to this situation? No. And first, the master plan document says that if you have an insurance policy and there's discretion in the insurance policy, that that the master plan says that if we have a funding instrument, which they define as an insurance policy, and the insurance policy provides discretion, yes, we're giving them discretion. So the master plan document says look at the insurance policy. The insurance policy doesn't have discretion, and it's fully integrated, and it's the entire agreement. So your position is that the H.E.R.T.S. master plan document is an insurance contract? No. Well, then how does the State of California's policy against discretionary clauses in insurance contracts apply? Okay. So what has what was happening at that point in time, and we've seen it in a number of cases, is because the State was not letting the insurance companies put discretion into the insurance contracts, people would slide discretion into the summary plan description, which was the issue that we had below, which is, well, can you put discretion in the summary plan description when it's not in the insurance contract? Okay. I respect your policy argument, but I guess it gets back down to the point again, though. The discretion here was in the master plan document. Do you have any authority under California law or otherwise that discretion can't be granted in a modified master plan document? Because you said to me it had to be in both, and that was going to be my question. What authority do you have that it must be in both? ERISA has very broad preemption, but it does not preempt State insurance law. And the State insurance laws, one of the things that they do is they say that the entire agreement, you have to have it all together. And so you have language in this policy, as you do in every policy, that says the this is the agreement, this is the entire agreement, it's integrated, and it includes the policy, the endorsements, and the application. Is there any federal law that suggests that State law is applicable to the contents of an SPD? It's an ERISA issue, isn't it? Well, that, of course, was the question, and that concerned Judge Walker, and under the Mix case, he said, well, no, but I think AMERA clears that up, because AMERA says, which is the Supreme Court, says, and came down really just as we were following the briefs here, and AMERA says the summary plan description cannot change the master plan document. So for purposes of determining discretion, we can throw away the summary plan description. It's got to be in the master plan document and the insurance policy are the only two places you have left to look. And the master plan document says that if the insurance policy provides for discretion, we give it discretion, period. So you're suggesting that the Supreme Court has told us that it is State law that can determine whether the summary plan description is correct? No. What the Supreme Court says is that the summary plan description cannot vary in terms of the master plan. Well, you're talking about AMERA? Yes. Because AMERA basically makes a distinction you make, that the employer is like the trust settler, and they execute the written instrument. And then the administrator, which I guess is Lena, puts together the summary plan document and the description of the plan in supposedly plain English, right? Well, yeah. I think the point is, is that if you have a term that's in a delegation of discretion in the summary plan description, it doesn't work. It's got to be in the master plan document. And it is in the master plan document in this case, right? The master plan document in this case says that if we have an insurance policy and it's the insurance policy says that they have discretion, we're delegating discretion. Doesn't it say the other way around? That they're delegating discretion unless the contract specifically says there can be no discretion. Isn't there? No. Do you want to reserve your remaining time for rebuttal? Yes. Thank you. You're welcome. Good morning. May it please the Court. Adrian Public over on behalf of Appellees, the Hertz LTD Plan and Life Insurance Company of North America, LINA. Unless the Court would like me to go another direction, I'll start and briefly address the arguments that Mr. Padway raised. First, on the breach of fiduciary duty claim, our argument is that that is legally defective, that the Federal Rules of Evidence, Rule 408, mandates that conduct of statements made in negotiations are absolutely inadmissible. Otherwise, there would be an unconscionable chilling effect on settlement communications. The arguments raised concerning the fiduciary claim presupposed that benefits are due. The lower court already confirmed that benefits weren't due. LINA attended the settlement in an effort to resolve a lawsuit, not to pay benefits. And so for that reason, the arguments concerning the fiduciary status of LINA really are inapplicable here. Are they inapplicable or do they basically just mean that there's nothing that would invade the settlement process? I mean, if they didn't really have any obligation other than as a regular party in a settlement negotiation, wouldn't it just mean that there's nothing in the settlement negotiations that should come to the fore? That is correct, Your Honor. LINA was a claim administrator. It was a fiduciary, but for purposes of deciding the claim and for paying benefits. In this instance, it was determined that benefits were not due. A lawsuit was filed. My clients attended the settlement as a party to a lawsuit, not to pay benefits. Second, Your Honors, we submit that the appellant has waived her right to appeal the standard of review. Let's say she hasn't. Let's say she hasn't. For purposes of argument. And I know you're not conceding that, but let's go to what standard of review, assuming she hasn't waived it. For purposes of argument, we will assume that the argument has not been waived. I think it's really important to keep in mind the timeline here, that Ms. Munn's last day of work was in May of 2006. Her claim was filed in November of 2006. Wait. Before you go to the timeline, let's go for a minute. We're not talking about waiver now, but we are talking about the relationship between the insurance contract and the master plan and the SPD. Yes. And can you just give us your version of do we really need to have discretionary language in both the master plan and the insurance contract? There is absolutely no law on the books that requires both. The timeline is important only to understand that the master plan was long in effect at the time that this claim was raised and denied. And the master plan document, which was effective in July of 2000, clearly grants the plan administrator discretion and authorizes the plan administrator to appoint claims administrators and to delegate its discretionary authority. The SPD also was in effect of July of 2000, and that also states that the plan administrator has discretionary authority and may delegate the responsibility to the insurance company. That wouldn't, if you didn't have it in the master plan document, but you only had it in the summary plan document, you'd have a problem, correct? AMARA simply stands for the position that the summary plan description cannot modify the terms of the plan. That's not what we have here. We have complete consistency, and we have a process. So the answer is if there was a discrepancy between the summary plan and the master plan, the master plan would control. That's correct. A summary plan description cannot create new plan terms that didn't exist in the master plan document. That's gross Solomon, and that's AMARA, and that's not what we have here. What we have here is a policy which is silent regarding discretion, but that does not create any sort of a conflict among the plan documents because the master plan document and the summary plan description clearly grant discretion to the plan administrator. In short, AMARA has no applicability to this case. That is correct, Your Honor. And there is no legal authority which supports that the grant of discretion to the plan administrator or the authority to delegate such discretion must be contained in the insurance policy. That law does not exist. I'd like to address just briefly the substantive issues in terms of the substantive aspects of the claim. At all times it has been plaintiff's, Ms. Munn's, appellant's burden to establish her entitlement to ERISA benefits. And in exhaustive detail, the medical records that were received are set forth in pages 11 through 14 of appellee's brief. We submit, Your Honors, that the denial was reasonable here because Ms. Munn failed to prove that she was continuously disabled through the elimination period. The letters that the company had a very clear dialogue with the appellant, both in written correspondence, in telephonic communications, in letters, in the denial letters, the company communicated to Ms. Munn exactly what was needed and exactly what she needed to establish. As I understand your position, Judge Walker really decided the payment issue, that's really not before us. Is that correct? Or is it before us? There is a lot before the Court, and I'm not really sure. So I just wanted to make sure that in order to protect my client's rights, that I was prepared to address all of the issues. You probably should address all of them. I probably should. Why don't you go ahead. I do want to ask you. I mean, when you do read these denials, it's not exactly clear what she needs to send in. I mean, we have this back and forth where they don't give the right release. They know that that's needed, so the doctors don't respond. I mean, you have this kind of limbo, and it goes back and forth and back and forth. And then finally, I think in the third denial or third appeal, the company is more specific. If under the case law the initial denials were not specific enough as to what she needed to provide, either in terms of that qualifying period or releases or something else, if we were determined that they were not sufficient, but the third one was, what would be the legal effect of that? I think the legal effect would be to uphold the denial. And it's not just the denial letters. There were also telephonic communications that are reflected in the administrative record and on the record in this Court. And there were – there was written correspondence between Lina and Ms. Munn in beginning of November and the end of November 2006. 463 is the November 30th, 2006 letter, which specifically instructed Ms. Munn that the company had sent requests to four named physicians, that it had not received records from those physicians, and it was waiting for records from those physicians. And really, all of this is actually a red herring and is somewhat moot, because the company actually received the records. So despite – I mean, the Court below confirmed, both Judge James and Judge Walker confirmed, that there was that full and fair communication, that full and fair dialogue that needed to occur. Are you saying that the company eventually did receive the records from all four doctors? Yes. Well, yes. It received records from Dr. Sinclair. It received records from Dr. Misak. It received doctors – records from Dr. Moharami. It received records from Dr. Kai-Sue Lai. And then it received a physical assessment form from Dr. Williams. And then it received a workers' comp report from Dr. Warburton. So it received a significant body of medical records. There's no evidence before any of – before this Court, before the lower court, that any other – that any other medical records exist. Would you clarify one other thing I wasn't completely clear on? Let's just assume that she had met the qualifying periods which she would need to in order for disability to kick in, correct? But then Dr. Misak and others seemed to think that there was a fairly short period there, and then she could go back to work. So even – is that right, that she could start a modified work program and then return to work later with no restrictions in 2007? So my question was, even if everything went her way, what period or what period of disability are we talking about? Assuming that the appellant had been disabled continuously by a cause – one cause of disability throughout the elimination period, May 21 through November 18 of 2006, then she would have been eligible for benefits to start on November 19, 2006. And the company would have paid her benefits for so long as she remained disabled. Disabled. Yes. But then I guess because one of the – her own doctor said she could return to work with no restrictions on February 19, 2007, that potentially would be just a very short period of time, right? Assuming that she – Assuming she met all of the other things. Correct. Correct. But the record is very clear that she was not continuously disabled by the reports of her own training positions throughout the elimination period. Right. No, I understand that she – your position that she never got the 26 weeks or 180 days. She never got to that point. That's correct. Okay. That – as I understand it, that's really the guts of the merits case, is that there was no documentation that the pain that she reported induced functional limitations throughout the elimination period that made it so she couldn't work. Is that right? That's a fair assessment, Your Honor. Yes. It was the totality of the circumstance. Right. Whether or not she had restrictions and limitations that precluded her from performing her regular occupation. But it was – she maybe had the spots in the elimination period where she complied but not throughout, and that was the predicate for recovery, right? In part. And the fact that the claimed restrictions and limitations resulted from wholly unrelated causes, which subsequently was confirmed by, again, Dr. Warburton, information that she submitted that part of the time she was disabled for a week or so for right foot, part she was disabled for a week or so based on her left foot. At one point in time, she had complaints relating to her back, her left thumb, her wrist, but the records don't support that any of those conditions are related and they don't support that they continuously existed for the time period. Well, that seems what was missing most in many of the reports was this relation to time period.  And I have two questions. One is, is it Lyna's position that it had to be that the – let's say that she was disabled. I know you're not – we're not asking you to concede. I'm just hypothesizing. From left wrist, right foot, whatever, did it have to be all from the same cause for the entire 26-week period? It needed to be related to the same cause. And it needed to be disabling. So, for example, it was determined that because she's right-handed, complaints relating to her left hand didn't – wouldn't have even necessarily disabled her because it wasn't necessary to perform the material and substantial duties of her occupation. The claim, as it was presented, was that she required an extended period of time on her feet, standing and walking, that she had pain and that she had certain diagnosed conditions related to her foot. And the company undertook an extensive investigation of the claim, attained medical records and other information from a multitude of physicians who had actually seen and treated Ms. Munn, reviewed those records and determined that she had not been continuously disabled. And Linus, traditionally, from what you've said, is that despite all the brouhaha about who got what, you actually got all these data from the various doctors, all of them that you're aware of. It actually was, in fact, reviewed. It just was denied based upon the criteria that you've indicated. That is correct, Your Honor. Okay. And I have one other question here, which is what was the fact that she could have gone back on a partial performance of her duties, but they wouldn't take her back? Hertz would not, as I read the record, Hertz would not take her back on a sort of – they needed her to work, what was it, six days a week, 12 hours a day some, and she couldn't do that? Again, had she been deemed by her physicians to be totally disabled throughout the benefit waiting period, that – and it's a hypothetical because that's not what happened, but my assumption would be, based on that hypothetical, that she probably would be entitled to benefits. But what the records reflected, many of the records indicated that there were no restrictions whatsoever. It was only in October when Dr. Mizuch said that she could return to modified duty at that time. But the majority of the records don't mention any time off work, don't mention any restrictions or limitations whatsoever. So again, because she was not deemed totally disabled through the elimination period, the subsequent part-time notations in the file really were not relevant. Okay. Thank you. Thank you. Unless the Court has any other questions. No. Mr. Padway, I know you've used up all your time, but I'm sure you want some rebuttal. So I'll ask the clerk to put a minute and a half on, and you can give us your high points. The excerpts from the record, starting at page 101, contain documents which Ms.      I'm going to ask the clerk to put a minute and a half on. Ms. Mizuch's plan, because she was confused about how things go in. Can I just stop you right there? Opposing counsel suggests that the doctor's reports that she named, in fact, did arrive. Are you referring to documentation other than the doctor's reports to which she made reference? Yes. What are they? These are off-work slips which cover all of the missing dates from, for the most part, these same doctors. In other words, the off-work slips were not in with the medical records, but apparently it were kept elsewhere. But how would that really change this collection of doctor's letters which basically say she wasn't totally disabled during this period? What they show is that, is a complete set of, for example, they say. In their brief, they say. Answer the question. Just because you're off work doesn't mean you're disabled. True. So my question is, you still have the doctor's reports. Even if you had all those off-work days, they don't really, from the doctor report. Well, except they're from the same doctor. So in other words, what I'm saying is that these doctors are not always writing in their notes the days off work. They're putting it on some of these other slips. But what happened, and of course the last thing that was submitted in the administrative record is the pre-op note. So she was scheduled for surgery on her foot, and actually in with these records at page 101 are some of the post-op notes. So she actually had the surgery and quite extensive disability. But those were not in the administrative record. Okay. I think your time has expired. But we have your point that there are some set of documents, in your view, missing from the administrative record that we have to look at. So I appreciate your point, and your time has expired. You've now had three, four minutes extra. So I think we've given you an opportunity. We do have your briefing. I thank both counsel for your argument this morning. The case just argued Munn v. Hertz is submitted. Thank you.
judges: Rothstein, McKeown, Smith